# EXHIBIT G

# WRIGHT

v.

# FINANCE SERVICE OF NORWALK, INC., 22 F.3d 647

22 F.3d 647

62 USLW 2659

Betty WRIGHT, Plaintiff-Appellant, Cross-Appellee,
v.
FINANCE SERVICE OF NORWALK, INC., Defendant-Appellee, Cross-Appellant.

Nos. 91-4156, 92-3004.

**United States Court of Appeals,
Sixth Circuit.**

*Reargued Dec. 8, 1993.
Decided April 19, 1994.*

Dennis B. Trimboli, UAW Legal Services Plan, Sandusky, OH (briefed), Louis Rosenberg, UAW Legal Services Plan, Indianapolis, IN (argued and briefed), O. Randolph Bragg, UAW-GM Legal Service Plan, Newark, DE (briefed), for Betty Wright.

Harland M. Britz, Britz & Zemmelman, Toledo, OH (argued and briefed), for Finance Service of Norwalk, Inc.

Before: MERRITT, Chief Judge; and KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, and DAUGHTREY, Circuit Judges.

BOGGS, J., delivered the opinion of the court, in which MERRITT, C.J., MARTIN, MILBURN, GUY, RYAN, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, and DAUGHTREY, JJ., joined. KENNEDY, J., delivered a separate opinion concurring in part and dissenting in part, in which NELSON, J., joined. JONES, J., delivered a separate dissenting opinion, in which KEITH, J., joined.

BOGGS, Circuit Judge.

1   Betty Wright, executrix for the estate of Gladys Finch, contends that she may collect $1,000 for every violation of the Fair Debt Collection Practices Act that Finance Service of Norwalk committed in its attempt to collect $112 from the deceased Finch. We hold that Wright has standing to bring this suit and that her recovery for additional damages is limited to $1,000 per proceeding, rather than $1,000 per violation of the Act. We therefore affirm the district court's judgment.

2   * Gladys Finch, who lived with her daughter, Betty Wright, died in October 1989. Wright was appointed executrix of her mother's estate in April 1990. After Finch's death, the defendant, Finance Service of Norwalk ("Finance Service"), a debt-collection agency, sent fourteen letters addressed to Finch. Each of these letters was an attempt to collect $112 from Finch for an allegedly overdue medical bill. Wright, acting as executrix for Finch's estate, opened the letters. Finance Service stopped sending the letters after Wright informed the agency that Finch had died.

3   Wright filed a complaint against Finance Service, pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. Secs. 1692 to 1692o. Wright alleged that each of the letters contained at least one violation of the FDCPA. In September 1991, each party moved for partial summary judgment. Wright moved for partial summary judgment on the thirty alleged FDCPA violations contained in the letters. Finance Service moved for partial summary judgment on the issue of Wright's standing to sue on the basis of letters sent to Finch. Finance Service also requested an in limine ruling that would limit Wright's recovery to $1,000 for damages beyond her actual losses, costs, and attorney's fees.

4   The district court partially granted Wright's motion for summary judgment, finding that Finance Service was liable on fourteen of the thirty alleged FDCPA violations. The district court denied Finance Service's motion for summary judgment on the issue of standing. The district court, however, granted Finance Service's motion in limine, finding that Wright could only recover statutory damages up to $1,000 per proceeding, in addition to any actual damages.

5   Wright appealed the district court's decision to limit her damages and Finance Service cross-appealed the district court's determination that Wright had standing to bring this suit. A divided panel of this court affirmed the district court's decision on Wright's standing, but reversed the district court's determination that Wright's additional damages were limited to $1,000 per proceeding. The panel's decision was vacated and a rehearing en banc was granted by order of September 15, 1993. 996 F.2d 827.

II

6   We first address Finance Service's cross-appeal on the issue of Wright's standing to bring this suit. The panel held that Wright had standing to bring this suit, and Finance Service did not contest this issue during the rehearing en banc. Thus we dispose of it briefly.

7   We read statutory terms in light of their plain meaning. Baum v. Madigan, 979 F.2d 438, 441 (6th Cir.1992). " 'Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them.' " Ibid. (quoting Caminetti v. United States, 242 U.S. 470, 486, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

8   In this case, the district court found that Finance Service violated 15 U.S.C. Sec. 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation ... in connection with the collection of any debt." Unlike other sections of the act where relief is limited to "consumers",[1] under Sec. 1692e a debt collection practice need not offend the alleged debtor before there is a violation of the provision.

9   The enforcement provision, Sec. 1692k(a), governs who may enforce provisions of FDCPA. That section provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person...." (Emphasis added.) We agree with the court in Riveria v. MAB Collections, Inc., 682 F.Supp. 174 (W.D.N.Y.1988), which found that this "liability section is couched in the broadest possible language." Id. at 175. Consequently, absent a limitation in the substantive provisions, the ordinary and common understanding of Sec. 1692k is that any aggrieved party may bring an action under Sec. 1692e.

10  We believe that the purpose of the FDCPA and the legislative history of the act also support this conclusion. The FDCPA's purpose is "to eliminate abusive debt

« up

collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. Sec. 1692(e). In outlining the need for passage of the FDCPA, the Senate declared that debt collection abuse was "a widespread and serious national problem." S.Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696. Congress, however, chose to leave enforcement to private, not governmental, means. S.Rep. No. 382 at 5, reprinted in 1977 U.S.C.C.A.N. at 1699.

11      Given the broad language of the FDCPA, the purpose of the statute, and Congress's intent to make the statute self-enforcing, we find that, at least in this case, the phrase "with respect to any person" includes more than just the addressee of the offending letters. We conclude that the phrase, at a minimum, includes those persons, such as Wright, who "stand in the shoes" of the debtor or have the same authority as the debtor to open and read the letters of the debtor. Otherwise, a debt collector's liability would depend upon fortuities such as an alleged debtor's death. Such a result is inconsistent with the broad scope of the FDCPA, and we decline to so limit the act.

12      Accordingly, we affirm the district court's holding that Wright, as the executrix of the estate, has standing to sue Finance Service under the FDCPA.

III

13      The second issue is whether the district court erred by limiting Wright's additional statutory damages to $1,000. The FDCPA provides, in pertinent part:

14      (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--

15      (1) any actual damages sustained by such person as a result of such failure;

16      (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1000; or

17      (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

18      (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

19      15 U.S.C. Sec. 1692k(a) (emphasis added).

20      As noted above, the rules of statutory construction require us first to consider the plain language of the statute. Madigan, supra. We give effect to Congress's intent, and where that intent has been expressed in plain terms, we ordinarily regard the language as conclusive. Id. at 442.

21      In this case, we find that the language of the statute is reasonably plain. The words of 15 U.S.C. Sec. 1692k(a)(2)(A) simply state that damages, above and beyond all actual damages, may not exceed $1,000 "in the case of any action by an individual." Congress certainly knows how to write statutes that make each separate violation subject to a separate penalty, or even that make each separate day of a

violation a separate offense subject to a separate penalty. See, e.g., 15 U.S.C. Sec. 1640(a)(2)(A)(i) (Truth In Lending Act requires statutory damages be computed on a "per transaction" basis); 33 U.S.C. Sec. 1319(d) (Clean Water Act allows a $25,000 "per day" fine for violations of the act). There is no such intimation, however, anywhere in the actual language of 15 U.S.C. Sec. 1692k(a)(2)(A), elsewhere in the act, or in any of the surrounding legislative history. Thus, even were we to need to consult legislative history, this absence of an intent contrary to the plain meaning of the words indicates that Congress intended to limit "other damages" to $1,000 per proceeding, not to $1,000 per violation.

22   Other sections of the FDCPA support this conclusion. For example, the statute provides, in part, that "[i]n determining the amount of liability in any action [under Sec. 1692k(a)(2)(A) ] ... the court shall consider, among other relevant factors ..., the frequency and persistence of noncompliance...." 15 U.S.C. Sec. 1692k(b)(1). The provision requiring courts to consider "frequency and persistence of noncompliance" in "any action" suggests that Congress envisioned situations such as this case, namely where repeated violations are the subject of a single proceeding.

23   This provision undermines Wright's contention that each noncompliance constitutes a separate "action". Where multiple violations occur, Congress intended the courts to award close to the full $1,000. Conversely, in less egregious situations, the court can award less. See, e.g., Whatley v. Universal Collection Bureau, Inc., 525 F.Supp. 1204 (N.D.Ga.1981).

24   We also note that allowing plaintiffs to recover on a "per violation" basis rather than a "per proceeding" basis creates an anomaly: an individual plaintiff could recover more in damages than a similarly situated plaintiff representing a class of claimants. This is because 15 U.S.C. Sec. 1692k(a)(2)(B), which immediately follows the section at issue, limits the amount of non-compensatory damages in a class action to a recovery that does not exceed "the lesser of $500,000 or 1 per centum of the net worth of the debt collector...." Thus, in a class action, which might usually be considered a vehicle for major punishment and enforcement, the plaintiffs' damages would be limited to 1% of the collector's net worth, whereas in a case such as the case at bar, damages could add up to any amount without legislative limit.

25   Consequently, the terms of the statute indicate that Wright's recovery for additional damages is limited to $1,000 per proceeding. All the courts publishing opinions on this issue have reached a similar result. See Harper v. Better Business Servs., Inc., 961 F.2d 1561 (11th Cir.1992); Beattie v. D.M. Collections, Inc., 764 F.Supp. 925 (D.Del.1991); Donahue v. NFS, Inc., 781 F.Supp. 188 (W.D.N.Y.1991); Whatley v. Universal Collection Bureau, Inc., supra; Harvey v. United Adjusters, 509 F.Supp. 1218 (D.Or.1981). Although Wright cites several unpublished district court cases as support for her argument, we find these cases unpersuasive and contrary to the plain meaning of the statute.

26   Accordingly, we hold that 15 U.S.C. Sec. 1692k(a)(2)(A) limits a plaintiff's additional damages to $1,000 "per proceeding" rather than "per violation." Such a limitation may, at first blush, seem to minimize the deterrent value of this statute in preventing debt collection abuses; we observe, however, that other provisions of the statute allow a plaintiff to recover all actual damages (Sec. 1692k(a)(1)), costs (Sec. 1692k(a)(3)), and attorney's fees (ibid.). This is sufficient deterrence that we should not lightly assume that Congress misstated its intent in the clear language of Sec. 1692k(a)(2)(A).

27   We AFFIRM the district court's judgment.

28      KENNEDY, Circuit Judge, concurring in part and dissenting in part.

29  « up  The District Court and the majority have concluded that the executrix had standing to bring this action. I disagree and respectfully dissent. I fully agree with the majority's holding that plaintiff's statutory damages are limited to $1000.00.

30      I begin with 15 U.S.C. Sec. 1692k(a), which governs a debt collector's civil liability, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person." Unfortunately, the phrase "any person" is not defined in the statute. The majority holds that "with respect to any person" includes more than just the addressee of the letters. It holds that the phrase includes those who stand in the shoes of the debtor or have the same authority as the debtor to open and read the letters of the debtor. Thus, it concludes that Wright, as executrix, had standing to bring her claims under the FDCPA.

31      To be liable under section 1692k(a), the debt collector must have violated a provision of the subchapter. The plaintiff has sued under section 1692d, which also uses the broad language of "any person" and section 1692e(1), (5), (8) and (11), which does not limit recovery to a person or to a consumer.

32      Under the definitions section, 15 U.S.C. Sec. 1692a(3), "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." Plaintiff has brought this action as executrix of decedent's estate. Thus, the real party in interest is the estate which, since it is not a natural person, cannot be a consumer. As pointed out in appellant's brief, the letters in this case were all sent after Gladys Finch's death. At that time, the debt or obligation was owed by the estate. Thus, the letters were not attempts to collect a debt of a consumer, which must be a natural person. Further, "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction."

33      Additionally, under 15 U.S.C. Sec. 1692c(d), which governs communications in relation to debt collection, the definition of consumer is specifically expanded to include "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." By this specific inclusion of executor as a consumer under section 1692c, Congress has inferentially indicated that an executrix is not otherwise considered a consumer.

34      The purposes behind the FDCPA include deterring abusive debt collectors and protecting consumers. For example, one of the congressional findings found in 15 U.S.C. Sec. 1692(a) of the statute is that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Clearly, most of these findings do not apply to an estate. For example, an estate does not experience marital instability, loss of jobs or invasion of privacy. While sections 1692d and 1692e use broad language, an overview of the FDCPA leads me to the conclusion that an executor or executrix representing an estate does not have standing under sections 1692d and 1692e. While this would be clearer if the executor were a bank or trust company, the fortuitous circumstance that the personal representative is an individual should not be the dispositive fact. The statute does not provide remedies to estates simply because the debt was a consumer debt contracted by the deceased.

35      NATHANIEL R. JONES, dissenting.

36

The majority today finds that the Fair Debt Collection Practices Act ("FDCPA") limits Wright's recovery to $1000 per proceeding as opposed to per violation. Because I continue to adhere to my original reading of the statute, see Wright v. Finance Service of Norwalk, 996 F.2d 820 (6th Cir.1993), vacated on grant of rehearing, 996 F.2d 827 (6th Cir.1993), I respectfully dissent.

The FDCPA, 15 U.S.C. Sec. 1692k(a) states:

37    (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to [actual damages; and]

38    . . . . .

39    (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

40    (B) in the case of a class action, [damages for named plaintiffs as in (A); and damages for other class members up to a prescribed limit.]

41    The majority reads this "in the case of any action" language of Sec. 1692k(a)(2)(A) to impose a per proceeding, and not a per violation, limit. It finds that the language of the statute and the legislative history support this conclusion. I disagree.

42    When attempting to divine the true meaning of a statute, it is well settled that the statutory language must be read in context and not in isolation. Oates v. Oates, 866 F.2d 203, 206 (6th Cir.), cert. denied, 490 U.S. 1109, 109 S.Ct. 3163, 104 L.Ed.2d 1025 (1989). Thus, the language of Sec. 1692k(a)(2)(A) must be read in accord with the language of the entire section. In context, the phrase "in the case of any action," which the majority finds to apply a per proceeding limitation on liability, is actually nothing more than a distinguishing clause meant to set off individual actions from class actions. Section 1692k(a) addresses civil liability in the context of two distinct types of suits. Specifically, Sec. 1692k(a)(2)(A) deals with individual actions, while Sec. 1692k(a)(2)(B) confronts liability in class actions.

43    Given that the phrase, "in the case of any action by an individual," serves only to differentiate between the statute's treatment of class actions and individual actions, I find that one must then return to the introductory language of Sec. 1692k(a) to ascertain the object of the $1000 limitation, which is enunciated in Sec. 1692k(a)(2)(A). This introductory language imposes liability on a collector for violations of the Act. Thus, violations are the object to which the $1000 limitation must attach.

44    Both the legislative history and the articulated purpose of the FDCPA support the conclusion that the $1000 limit applies per violation. The purpose of the FDCPA is

45    to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

46    15 U.S.C. Sec. 1692(e). The legislative history reveals a similarly broad desire to remedy debt collection abuse, which is a "widespread and serious national problem." S.Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696. Reading the statutory language to apply a per violation limit of $1000 would best serve these broad goals. However, the majority's holding today will likely achieve an opposite result.

47     Because Congress has designated consumers as the primary watchdogs over FDCPA violations, a per proceeding limit of $1000 unwisely frustrates the FDCPA's broadly stated goals. The meager financial benefit for bringing suits that the majority's holding imposes will discourage consumers from expending the energy necessary to pursue FDCPA claims.

« up

48     Moreover, the majority's holding in the instant case invites an even greater harm. The majority's refusal to apply the $1000 limit to each violation illogically rewards unscrupulous collectors who, having engaged in an initial violation during attempts to collect on a particular debt, continue with their abusive practices. Applying a flat $1000 ceiling to any one proceeding, regardless of the number of violations involved, means that as the number of violations increases the cost per violation to the collector decreases. I cannot agree that this is a correct result; accordingly, I respectfully dissent.

---

[1] For example, only a "consumer" has standing to sue for violations under 15 U.S.C. Sec. 1692c. This section prohibits a debt collector from, inter alia, contacting a consumer at unusual times or places. By definition, enforcement of violations of this section is limited to "any natural person obligated or allegedly obligated to pay any debt", 15 U.S.C. Sec. 1692a(3), or "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator", 15 U.S.C. Sec. 1692c(d). See West v. Costen, 558 F.Supp. 564, 577 (W.D.Va.1983). Of course, had Finance Service violated this section of the FDCPA, there would be no question about Wright's standing to sue

Section 1692c, however, appears to be the most restrictive of the FDCPA's provisions. The other provisions are not limited to "consumers," and thus are broader than Sec. 1692c. See Whatley v. Universal Collection Bureau, Inc., 525 F.Supp. 1204 (N.D.Ga.1981) (FDCPA allows any person who has been harmed by a proscribed debt collection practice under Sec. 1692d to sue for damages under Sec. 1692k(a)(2)(A)).



CC0 | TRANSFORMED BY PUBLIC.RESOURCE.ORG